IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

MARILYN COMPTON                                                    PLAINTIFF


v.                              No. 4:09-cv-814-DPM


ARKANSAS VETERANS HOME;
and DAVID FLETCHER, Director,
Arkansas Veterans Home                                           DEFENDANTS


### ORDER

Marilyn Compton sued her former employer, the Arkansas Veterans Home, and its director, David Fletcher, and others, alleging violations of Title VII of the Civil Rights Act of 1964, the Americans With Disabilities Act, and the Family Medical Leave Act. Fletcher and the Veterans Home are the remaining defendants; they move for summary judgment. *Document No. 29.* Taking the disputed facts of record in the light most favorable to Compton, *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011), the Court concludes that Fletcher and the Veterans Home are entitled to summary judgment. Here is why.

1. **Background.** The Veterans Home hired Compton in August 2007 as the Assistant Director of Nursing. The Veterans Home considers this a

critical position.   While she was on the job, Compton began to suffer symptoms of carpal tunnel syndrome.  The symptoms sometimes impaired her ability to perform her job, which required a substantial amount of handwriting in completing and revising the comprehensive care plans for each resident of the Veterans Home.

On 17 November 2008, Compton left work and went to the hospital because of an accelerated heart rate and sudden anxiety.  This spell was likely caused by the return of a co-worker with whom Compton had previously had unpleasant encounters.  *Document No. 34-3, at 4–7.*  Compton was treated by an emergency room physician,  diagnosed as having had an anxiety attack, prescribed medication, and told she could return to work in two days, on 19 November 2008.  *Document Nos. 29-4 & 29-5, at 1.*

Compton did not return to work on November 19th.   Instead, she visited her family physician who put her on six-weeks work leave because of an "acute" illness.  No other details were given.  *Document No. 29-5, at 2.*  Thus began Compton's extended absence from the Veterans Home.  Her absence was supported by numerous doctors' notes excusing her from work from November 2008 through August 2009.  These notes — dated roughly every two

to four weeks during that period — were from three different doctors; none of them mentioned carpal tunnel syndrome as a reason for leave; and two of them listed "depression" as her only medical condition. *Document No. 29-5, at 3–12*. Compton also filed an EEOC complaint on 20 November 2008 alleging racial discrimination in the workplace. Those allegations are not in issue in this case.

The Veterans Home eventually placed Compton on FMLA leave in early January 2009. When she did not return to work after the statutory twelve-week-maximum period, the Veterans Home gave her an additional five and a half weeks of leave. Despite the instruction that she must file biweekly status reports, Compton made little effort to keep her employer updated on her condition. In a 5 May 2009 letter, Doyle Batey, Deputy Director for the Department of Veterans Affairs, informed Compton that her FMLA leave had expired; that her last doctor's note had instructed her to remain off work through 30 April 2009; and that the Veterans Home had expected her back at work the next day, May 1st. The letter warned Compton that "[f]ailure to return to work is considered job abandonment[,]" and that she had until May 15th to return or inform the Veterans Home of her status. *Document No. 29-7*.

-3-

The notes continued, as did Compton's absence.  The Veterans Home fired her on 16 June 2009.

The parties agree that Compton began to develop symptoms of carpal tunnel syndrome in her right arm in May 2008.  And it is uncontroverted that in December 2008 a doctor diagnosed her with the condition, about a month after she stopped going to work at the Veterans Home.

2.  **FMLA.**  Because Compton concedes that she does not have a viable claim for relief under the FMLA, *Document No. 43, at 1*, the Veterans Home and Fletcher are entitled to judgment on that claim.

3.  **ADA.**  In her complaint, Compton initially described her claim under the ADA as one for wrongful discharge.  It is evident from her later papers, however, that her claim arises from the Veterans Home's alleged failure to reasonably accommodate her alleged disability.  Specifically, Compton expected the Veterans Home to pay for surgical decompression to relieve the symptoms of her carpal tunnel syndrome.  For example, Compton says that by failing to pay for her surgery, "the Defendants did not

-4-

accommodate her disability[,]" *Document No. 34, at 1*, and the Defendants'
refusal "to pay for surgery that would relieve her carpal tunnel syndrome"
was in violation of the ADA, *Document No. 36, at 10*.

"To prove disability discrimination, an employee must show that (1) the
employee is disabled within the meaning of the ADA; (2) the employee is
qualified (with or without reasonable accommodation) to perform the
essential functions of a job; and (3) the employee suffered an adverse
employment action because of the disability." *Henderson v. Ford Motor Co.*,
403 F.3d 1026, 1034 (8th Cir. 2005).  In her failure-to-accommodate claim,
Compton "at all times retains the burden of persua[sion] . . . that [she] has
been the victim of illegal discrimination due to [her] disability." *Fenney v.
Dakota, Minnesota & Eastern R. Co.*, 327 F.3d 707, 712 (8th Cir. 2003).

Compton offers no authority holding that an employer must pay for
surgery as a reasonable accommodation.  The appendix to Part 1630 of Title
29 of the Code of Federal Regulations, titled "Interpretive Guidance On Title
I of the Americans with Disabilities Act," is instructive on this point.  A
reasonable accommodation, it states, "is any change *in the work environment* or
in the way things are customarily done that enables an individual with a

disability to enjoy equal employment opportunities." 29 C.F.R. § 1630.2(o), Appendix at 395 (2011) (emphasis added). Compton's request for surgery is beyond the scope of a reasonable change in the work environment.

Although it was not mentioned in her complaint, Compton also argued in her deposition and papers that she needed special "software . . . as well as the corrective surgery" as an accommodation. Her software/surgery claim fails in any event because she never gave adequate notice to the Veterans Home that she was requesting this accommodation. "[I]t is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." *Kobus v. College of St. Scholastica, Inc.*, 608 F.3d 1034, 1038 (8th Cir. 2010) (quotation omitted); *Ballard v. Rubin*, 284 F.3d 957, 960 (8th Cir. 2002). If the employee fails to do so, "then [the] employer has no duty to accommodate." *Buboltz v. Residential Advantages, Inc.*, 523 F.3d 864, 870 (8th Cir. 2008), *abrogated in immaterial part by Torgerson*, 643 F.3d at 1058.

There does not appear to be any hard-and-fast rule about the form of a request. Indeed, "the absence of an express and unequivocal request is not necessarily fatal to a failure-to-accommodate claim." *Ballard*, 284 F.3d at 961. But "the notice nonetheless must make clear that the employee wants

assistance for his or her disability[]" and "the employer must know of both the disability and the employee's desire for accommodations for that disability." *Ballard*, 284 F.3d at 962 (quoting *Taylor v. Phoenixville School District*, 174 F.3d 142, 158–59 (3d Cir. 1999)).

Compton never adequately notified that Veterans Home that she was requesting accommodation—either through surgery or software—for her carpal tunnel syndrome. As to the software, she told Marion Harris, her immediate supervisor, that the software would make it easier for her to complete the care plans and prevent her hand from hurting. Compton acknowledges, however, that she made this request before she knew she had carpal tunnel. *Cf. Ballard*, 284 F.3d at 962 (employer must know of *both* the disability and the employee's desire for accommodation). The context, moreover, is critical. It is undisputed that Compton made the software request when discussing with Harris whether the Veterans Home needed the software to meet the requirements of the Veterans Administration, which periodically reviewed the facility. The Court therefore concludes that Compton's request for this software was not adequate to trigger the Veterans Home's obligation to initiate the interactive accommodation process. *Cf.*

*Cravens v. Blue Cross and Blue Shield of Kansas City*, 214 F.3d 1011, 1021 (8th Cir. 2000) (employee with carpal tunnel syndrome "specifically requested assistance" with an accommodation).

Compton next says that the Veterans Home was put on notice once her doctor diagnosed her carpal tunnel syndrome in December 2008 and recommended surgery. It is undisputed, however, that she made no specific request for surgery to her employer. Instead, she thought her doctors would notify the Veterans Home of her need for surgery; and she relied upon the doctors to do so. But the only communication from her doctors about the need for surgery was an April 2009 letter from Dr. Richard Wirges to a case manager at the Public Employee Claims Division. As discussed later, there is no evidence this letter ever reached the Veterans Home.

Finally, Compton argues that the Veterans Home should have had constructive notice of her disability because of a claim she litigated before the Arkansas Workers' Compensation Commission. In that case, the Administrative Law Judge eventually awarded Compton disability benefits and concluded that the Department of Veterans Affairs remained liable for

"continued reasonably necessary medical treatment, including, but not limited to recommended surgery." *Document No. 39-1, at 8*.

Compton's argument that the decision in her workers' compensation case constituted adequate notice fails for two reasons. First, the ALJ's Order resolving the claim was not entered until late August 2009, more than a month after Compton had been let go. Second, the Veterans Home offered unrebutted affidavits demonstrating it was not privy to all of the details of the workers'-compensation dispute. Rather, the Public Employee Claims Division of the Arkansas Insurance Department processes, investigates, and responds to workers'-compensation claims filed by employees of state agencies. The Department of Veterans Affairs is not asked to dispute such a claim and is not advised of every step in the claims process. Compton responded by pointing to various Arkansas statutes governing employee claims and the PECD, and by speculating that the Veterans Home had to have cooperated in the investigation and was therefore aware of her condition. But this is only speculation; Compton did not meet proof with proof on this issue. *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010).

**4.   Retaliation.**  Compton also contends that the Veterans Home retaliated against her for filing the EEOC charge in November 2008.  She makes her retaliation claim under Title VII, not the ADA; the analysis is the same.  The court must "analyze retaliation claims (whether under Title VII, the ADA, or the ADEA), under the burden–shifting framework of *McDonnell Douglas Corp. v. Green*[.]" *Stewart v. Independent School District No. 196*, 481 F.3d 1034, 1042–43 (8th Cir. 2007).

Compton must make her *prima facie* case by showing three things:  (1) that she engaged in statutorily protected activity; (2) that she suffered an adverse employment action; and (3) that a causal connection exists between the two events.  *Stewart*, 481 F.3d at 1043.  If Compton establishes a *prima facie* case, the burden shifts to the Defendants to show a non-retaliatory reason for why they let her go.  If the Veterans Home can show a legitimate reason, the burden then returns to Compton, who must present evidence that creates a question of fact on whether the Veterans Home's reason was merely a pretext for retaliation.  *Ibid.*  Although the amount of proof required to show causation is less at the *prima facie* stage than at the pretext stage, "the ultimate burden of proving retaliation remains at all times with [Compton]."  *Ibid.*

Compton has not made a *prima facie* case for retaliation.  First, she asserts that the Veterans Home retaliated against her by posting her job position so that others could apply for it in January 2009 and by advertising the position in the *Arkansas Democrat-Gazette* in February 2009.  *Document No. 1, at 3; Document No. 36, at 12.*  Compton offers no legal support for the proposition that posting or advertising her position, without more, constitutes an adverse employment action within the ambit of Title VII or the ADA.

"An adverse action occurs when an employee suffers some personal loss or harm with respect to a term, condition, or privilege of employment." *Hoffman v. Rubin*, 193 F.3d 959, 964 (8th Cir. 1999).  Although Compton says in her complaint that she "interpreted these [postings] as threats of termination[,]" *Document No. 1, at 3*, the undisputed facts undermine this interpretation.  She was not terminated as a result of the job postings.  No one was hired in her place.  About five months passed before Compton was fired.  And she does not assert that the posting was ever used as a basis for any employment action against her.  In sum, the posting and advertising of her position did not affect a term, condition, or privilege of her employment. "Although actions short of termination may constitute adverse actions within

the meaning of [Title VII], not everything that makes an employee unhappy is an actionable adverse action." *Montandon v. Farmland Industries, Inc.*, 116 F.3d 355, 359 (8th Cir. 1997) (quotations omitted).

Compton also attempts to ground her retaliation claim on her actual firing in July 2009—a definite "adverse employment action." Compton, however, still cannot establish the required causal link between her November 2008 EEOC complaint and her July 2009 termination. "[I]t remains clear that a gap in time between the protected activity and the adverse employment action weakens an inference of retaliatory motive, and that, given a delay of sufficient length, the causal nexus tends to evaporate." *Stewart*, 481 F.3d at 1044 (six-month gap between filing of EEOC claim and alleged retaliatory act too long to infer retaliatory motive) (quotations omitted); *see also Sisk v. Picture People, Inc.*, ___ F.3d ___ , No. 10–3398, at 7 (8th Cir. 28 February 2012) (collecting timing cases). In Compton's case, the gap of nearly eight months between the two events diminishes any potential inference of retaliatory motive. And when coupled with the fact that

-12-

Compton had not returned to work during the entire period, that inference — along with the necessary causal nexus — evaporates.

Even assuming that Compton could establish her *prima facie* case, her retaliation claim fails as a matter of law at the pretext stage. Her extended, uncommunicative absence from work establishes the Veterans Home's legitimate, non-retaliatory reason for terminating her. Compton had been gone from work for almost eight months. During that time, the Veterans Home extended her FMLA leave beyond the legally required period and made many attempts to communicate with Compton to discuss her work status. The Veterans Home told her that if she could not return to work by a certain date, her job would be considered abandoned. Yet Compton gave no indication if or when she would ever return to her position at the Veterans Home.

"[E]mployers should not be burdened with guess-work regarding an employee's return to work after an illness." *Peyton v. Fred's Stores of Arkansas, Inc.*, 561 F.3d 900, 903 (8th Cir. 2009). The Veterans Home was left to guess whether Compton would ever return. The Assistant Director of Nursing is an important position, even if not a critical one as Defendants assert. Her

-13-

absence diminished the Veterans Home ability to do its good, and needed, work.   After almost eight months' absence, and with little communication from her, the Veterans Home's decision to fire Compton was a legitimate one. Compton has offered no proof that this reason was merely a pretext for discrimination.   No reasonable fact-finder could conclude otherwise.   *Diaz v. Tyson Fresh Meats, Inc.*, 643 F.3d 1149, 1152 (8th Cir. 2011).

*   *   *

Because the evidence does not support any reasonable inference of discrimination or retaliation, the Veterans Home and Fletcher are entitled to judgment as a matter of law.   Motion for summary judgment, *Document No. 29*, granted.   Compton's complaint is dismissed with prejudice.   The Defendants' motion *in limine*, *Document No. 40*, is denied as moot.

So Ordered.

NPMfarshall Jr.

D.P. Marshall Jr.
United States District Judge

1 March 2012